# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**DIANE ROSE CONLEY**                                                                 **PLAINTIFF**

**V.**                        **NO. 2:19CV00103 SWW/PSH**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**[1]                **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I. Introduction:**

Plaintiff, Diane Rose Conley, applied for supplemental security income benefits on July 11, 2017, alleging a disability onset date of January 1, 2014.[2] (Tr. at 15). The application was denied initially and upon reconsideration *Id*. After

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] For supplemental security income benefits, the relevant time-period begins on the date the application was filed. (Tr. at 15).

conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Conley's claim. (Tr. at 22). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Conley has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II. The Commissioner's Decision:

The ALJ found that Ms. Conley had not engaged in substantial gainful activity since the application date of July 11, 2017. (Tr. at 17). At Step Two of the sequential five-step analysis, the ALJ found that Ms. Conley had the following severe impairments: degenerative disc disease, degenerative joint disease, carpal tunnel syndrome, and obesity. *Id.*

The ALJ found that Ms. Conley's impairments did not meet or equal a listed impairment. *Id.* Before proceeding to Step Four, the ALJ determined that Ms. Conley had the residual functional capacity ("RFC") to perform work at the sedentary level, with limitations. *Id.* She could only occasionally stoop, crouch, crawl, and kneel, and she could only occasionally finger and handle bilaterally. (Tr. at 18).

The ALJ next found that Ms. Conley had no past relevant work. (Tr. at 21). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Ms. Conley's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 22).

Therefore, the ALJ found that Ms. Conley was not disabled. *Id*.

## III. Discussion:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the

3

ALJ's decision, and the transcript of the hearing.

B. Ms. Conley's Arguments on Appeal

Ms. Conley contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ did not properly analyze obesity as it related to other impairments at Step Three, and that he should have called a medical expert to address the Step Three Listings conclusion.[3] After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Conley suffered from chronic back and knee pain, although there are few records related to these conditions during the relevant time-period. Lumbar MRI from 2016 showed mild degenerative disc disease with mild loss of disc height and compression of the L4 nerve root. (Tr. at 386). Another MRI showed multilevel spondylosis with foraminal narrowing. (Tr. at 361). However, range of motion was generally normal in Ms. Conley's back. (Tr. at 464, 471, 485-486). Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). She was treated conservatively with over-the-counter and prescription pain medication, and was urged to do gentle stretching and exercise. (Tr. at 383, 387, 549). A physician's recommendation to exercise suggests that a

---

[3] The Adult Listings of Impairments ("Listings") define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

Likewise, Ms. Conley's knee condition did not present as disabling. A knee x-ray showed degenerative changes and osteoarthritis. (Tr. at 588). Ms. Conley said she used a knee brace and treated with Tylenol. (Tr. at 582). The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). She had full range of motion in her knee in January 2018. (Tr. at 581).

Ms. Conley's doctor did not recommend surgical intervention and suggested she try non-surgical measures like weight loss before considering aggressive treatment. (Tr. at 387). She did not seek physical therapy or get injections. Ms. Conley said she could perform personal care, prepare simple meals, do chores, go to church, and shop in stores. (Tr. at 214-217). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). Also, she admitted to working during the relevant time-period. (Tr. at 549).

Ms. Conley was 5' 3" and weighed 243 pounds, so the ALJ found that obesity was a severe impairment. (Tr. at 45). She argues that the ALJ should have found that obesity, when combined with her other impairments, met a Listing. The ALJ in this case discussed Ms. Conley's obesity at Step Three. (Tr. at 18). He noted that obesity

was no longer a condition found in the Listings; instead, it is evaluated in combination with other conditions like respiratory or cardiovascular problems. *Id.* The ALJ wrote that obesity can exacerbate these problems, but when the record is devoid of specific limitations based on obesity, or shows otherwise mild to moderate conditions, obesity is not of Listings-level severity. *See Brown v Astrue*, 2013 U.S. District LEXIS 18040 (E.D. Ark. February 11, 2013). This record showed conservative treatment and mild to moderate objective findings, and Ms. Conley was able to perform activities of daily living. She was encouraged to exercise. No doctor placed a formal restriction on her. She was able to work during the relevant time-period.

The plaintiff carries the burden to show she has met a Listing, and she did not do so here.[4] Moreover, when an ALJ specifically discusses the claimant's obesity during the claim evaluation process, as was done here, such review is sufficient to avoid reversal. *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004). Finally, the ALJ properly considered the medical record as a whole at Step

---

[4] In addition to her obesity, Ms. Conley claimed she met Listings 1.04 (back disorder) and 1.02 (dysfunction of a joint).
https://www.ssa.gov/disability/professionals/bluebook/AdultListings.htm.
"To meet a listing, an impairment must meet all of the listing's specified criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing references omitted). Ms. Conley did not show that she met all of those Listings requirements, even in the presence of obesity.

Three, and the record was not in conflict, so he was not required to call on the services of a medical expert.

## VI. **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Ms. Conley was not disabled. The ALJ properly analyzed Ms. Conley's impairments at Step Three. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 28th day of April, 2020.

_____
UNITED STATES MAGISTRATE JUDGE